VENNER, Respondent, vs. PITTSBURGH PLATE GLASS COMPANY, Appellant.

*March 12—April 5, 1927.*

*Patents: Assignment on royalty basis: Duty of assignor to defend infringement claims: Not bound to prevent unauthorized use.*

1. Where a contract assigning the exclusive right to manufacture a certain liquid filler and primer by a method devised by the assignor provided that he would defend the title thereto in case he received a patent and would protect the assignee against any claims or proceedings brought on the basis of an infringement of the patent rights, the assignor, after securing a patent thereto, was bound only to defend the title to the patent and protect the assignee against proceedings for alleged infringement, and was not compelled to prevent the sale by other dealers of an article substantially the same as that covered by the assigned patent. p. 612.

2. A paragraph in the contract that in case a patent was not granted the royalties should cease as soon as it was demonstrated that the value of the secret formula had vanished, by reason of other manufacturers being able to accomplish the same result, is an independent covenant, and, the patent having been granted, the assignor was not bound to prevent its unauthorized use by third persons. p. 612.

APPEAL from a judgment of the circuit court for Milwaukee county: G. N. RISJORD, Judge. *Affirmed.*

December 3, 1907, one Venner made a contract with defendant's predecessor, Patton Paint Company, concerning,

among other things, the exclusive right by such paint company for twenty years, with an extension option, to manufacture and sell an elastic liquid filler and primer by a method or formula devised by him and for which an application for patent was then pending. The patent, issued July 14, 1908, was, under the provisions of said contract, assigned to a designated trustee.

Under this contract Venner was to fully instruct the paint company as to the composition and methods of manufacturing such article and to render any further assistance proper on his part in that regard; also not to reveal, during the life of the contract, to any other person any knowledge relative to such process, formulas, or manner of manufacturing. He also guaranteed that the said article could be properly manufactured and produced by means of appliances and equipment commonly used for the manufacture and production of varnish, and provisions were made concerning the minimum cost and as to the minimum quantity of production.

As royalty or commission said Venner was to be paid ten cents per gallon for each gallon manufactured and sold.

It was also provided with reference to securing patents in any foreign country that such should be done at Venner's expense upon notice from the paint company of its desire to sell in such country, and in case patent cannot be secured the paint company "shall thereafter be excused from and shall not be required to pay any royalty whatever upon any sale made in the said country of the said liquid filler and primer."

Payments of such royalties, apparently in very substantial amounts, were made to Venner until his death in 1910. The plaintiff, his widow, succeeding to substantially all his interest in the said contract, continued to receive further payments until November, 1921. Then the defendant, having acquired the interests of the Patton Paint Company, called the plaintiff to an interview with one of its officers, notifying her that no further royalties would be paid unless and until steps were taken by her to prevent the serious competition

in the markets of the country with the sale of this article by other large paint or varnish firms which were advertising and selling, and at a lower price, an article substantially the same in composition and quality as that being manufactured under this Venner patent, and also advising *Mrs. Venner* to take legal counsel and proceedings. She did nothing as against such competitors and commenced this action in March, 1925, to recover the royalties then claimed to be due on the sales made.

The parts of the amended answer material here stated what was claimed to be the substance or effect of the provisions of the original contract contained in the paragraphs *"A" and "B,"* which for convenience are so designated and set forth in the opinion, and that prior to November 1, 1921, a competing article came upon the market equal in all material respects to the said liquid filler and seriously and materially affected the quantity and extent of defendant's sales of said article; that defendant promptly notified plaintiff of such facts and requested plaintiff to join with defendant in submitting to a board of arbitrators the question of the respective merits of the competing articles; that plaintiff refused and declined so to do and has refused to protect the defendant in its exclusive rights to the manufacture of an article of the character of said filler and primer as granted by the said patent; that as a result defendant has suffered damage.

Upon the trial a computation as to the amount, with interest, of royalty accruing from the defendant's sales was agreed to be $31,400.91.

At the close of the jury trial and on respective motions for a directed verdict the court granted plaintiff's motion.

From the judgment defendant appeals.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *J. V. Quarles,* of counsel, all of Milwaukee, and oral argument by *J. V. Quarles.*

For the respondent there was a brief by *O. L. O'Boyle,* attorney, and *Miller, Mack & Fairchild,* of counsel, all of Milwaukee, and oral argument by *Mr. O'Boyle.*

ESCHWEILER, J.  Appellant contends that competing paint and varnish companies were underselling with a similar product its product manufactured under the Venner formula and patent, and that plaintiff, having failed, after due notice, to protect defendant from such competition, had forfeited all right to further royalties by reason of what it claims is the proper construction to be given to certain provisions of the contract.

Particular errors are assigned to rulings refusing to permit defendant to show that up to November, 1921, the time of the interview with plaintiff, there had already been expended by it and its predecessor some $180,000 in advertising, and some $85,000 of further expense incident to placing special salesmen in the field to dispose of this particular product; in refusing an offer to show the extent of its business in regard to this product; refusal to permit the showing, by witnesses called for that purpose, the substantial percentages of decline in defendant's sales districts covering a large portion of the United States; also refusing to receive evidence that such competing articles were identical in composition and result with the article manufactured by defendant under the Venner patent.  If the trial court was correct in the construction given this contract, then these particular rulings were proper and need no further consideration.

The following provisions of the contract, the construction of which determines the respective contentions of the parties, for convenience of reference are here set forth as "A" and "B":

A. "Said party of the first part hereby further agrees that in case he receives the patent for either of said articles that he *will defend the title thereto* and will *protect and save*

*harmless,* at his cost and expense, said party of the second part from and against any and all claims or legal proceedings brought against said party of the second part on the *basis of infringement of patent rights."*

B. "It is hereby agreed by and between the parties hereto, that in case the said party of the first part shall fail to receive a patent for the said liquid filler and primer, and provided that during the life of this instrument other persons or corporations shall succeed in manufacturing an article in competition with the said liquid filler and primer, then and in that event it is agreed that the question as to the relative merits of the said liquid filler and primer and the said article then upon the market in competition therewith shall be submitted to a board of arbitrators, one to be chosen by each of the parties hereto, they to choose a third, which said arbitrators shall render a report in writing to the parties hereto in relation to the respective merits of the said article and the article competing therewith.

"It is further agreed that in case the said arbitrators should report that the said competing article is equal in all material respects to the said liquid filler and primer, then and in that event the said party of the second part shall thereafter be excused from and shall not be required to pay to the said party of the first part any royalty upon any sale of the said liquid filler and primer; provided, however, that in that event the said party of the first part shall thereafter have the right to manufacture and sell said liquid filler and primer."

No claim was made below or is made here by defendant that any situation was presented between itself and its competitors whereby any issue could be raised or presented between them involving the validity of or possible infringement upon the Venner patent, or that such others were manufacturing their competing products under claim of patent rights.

The substance of appellant's contention is that, construing the above quoted paragraphs "A" and "B" together and with the rejected offers of proof above recited, there was a breach under the contract of 1907 of a positive duty resting upon plaintiff to protect and save harmless the defendant

from such competition, and that the oral evidence suggested was proper at least, if not necessary, in order to reach a correct construction of the contract relationship between the parties.

In our opinion the contract, and especially the provisions "A" and "B" above quoted, is and are clear, definite, unambiguous, and not needing or permitting of oral evidence in arriving at a proper construction.

The contract shows on its face that at the time of its execution Venner had devised a method or formula for the manufacture of a valuable article and that no patent had yet been issued. In consideration of that situation the contract was evidently carefully drafted to provide for the two possible contingencies then confronting the parties, namely: first, that letters patent of the United States might be issued whereby security and safeguards would be given to the manufacture of this article under such patent; this contingency is clearly covered by the above paragraph "A," which is entire and complete. The provisions made in paragraph "B" are just as clearly made to be exclusive and complete for the second contingency which would exist or arise in case no patent were granted and defendant then continued to manufacture pursuant to the secret formula and methods communicated to it by Venner and without, of course, any protection by virtue of letters patent, and other products then came into competition; it being further manifest by this paragraph "B" that in such contingency of no protection by letters patent that the obligation to pay further royalty should terminate as soon as it was demonstrated, through the method of arbitration there provided for, that the value to defendant of such secret formula had vanished by reason of other manufacturers being able to accomplish the same result.

Paragraphs "A" and "B" clearly show that they were independent provisions and when one became applicable the other

did not.   The patent being granted, paragraph "A" alone was in force and effect, and paragraph "B" for all practical purposes dropped out of consideration.

Under paragraph "A" Venner was bound to defend defendant's title to the patent, and, if necessary, protect and save harmless defendant by reason of any claim or legal proceedings brought against it upon the basis of an alleged infringement of patent rights.   To that extent and no further was Venner obliged to go.·

The defendant has not shown or offered to show any situation under which a liability can be said to arise under this provision "A" of the contract, and it and its predecessor, having accepted, recognized, and acted under the supposed value and protection by letters patent, has therefore failed to show any defense to the plaintiff's claim for royalty upon the quantity of the article actually manufactured and sold by defendant during the life of the contract and the period included in the agreed computation upon the trial.

*By the Court.*—Judgment affirmed.